Rockingham,
No. 5568.

ELMER A. BOSSE & *a.*

*v.*

PORTSMOUTH & *a.*

Argued December 7, 1966.
Decided January 27, 1967.

*John J. Wholey* ( by brief and orally ), for the plaintiffs.

*John C. Driscoll*, city solicitor, furnished no brief for the city of Portsmouth.

*Shaw & Eldredge* ( *Mr. Carleton Eldredge* orally ), for defendant Pace Industrial Corporation.

LAMPRON, J. The city of Portsmouth has had zoning in effect since 1951. On January 4, 1965 it adopted a new ordinance which was later declared invalidly enacted. On March 21, 1966 the present zoning ordinance was adopted by the city council.

On October 15, 1965, defendant Pace Industrial Corporation, a business corporation employing handicapped persons, purchased for $15,000, 9.7 acres of land on the southwesterly side of Ocean Road in Portsmouth. 4.2 acres thereof, as found by the master, or 4.6 acres, as stated in Pace's brief, are located in Portsmouth and the remainder is in Greenland. This difference of .4 acres in the area located in Portsmouth being immaterial to the decision

the figure 4.2 acres will be used hereafter. When purchased by Pace, the Greenland part of the land was zoned residential and was changed by a variance to light industrial on January 17, 1966. The Portsmouth land had been zoned residential until rezoned by an amendment to the 1965 zoning ordinance on February 7, 1966 to " Limited Industrial. " It was given this same classification in the 1966 ordinance.

The plaintiffs are owners of real estate located on Ocean Road and Banfield Road which, like the Pace property before it was rezoned, is in a " Single Residence — 1 " classification, the most restrictive type of zoning district under the 1965 and 1966 ordinances. The plaintiffs petitioned for a rehearing when the 1965 ordinance was amended on February 7, 1966 and also when the 1966 ordinance was adopted on March 21, 1966. The latter rehearing resulted in the defeat by a tie vote of a motion to rezone the Pace property to its prior classification of " Single Residence — 1. " Plaintiffs thereafter filed this appeal and are properly entitled to question the validity of the 1966 ordinance which classified the Pace property " Limited Industrial. " *Towle* v. *Nashua*, 106 N. H. 394, 396.

The plaintiffs first attack the validity of the 1966 ordinance on the ground that the city council failed to first appoint a zoning commission as required by RSA 31:65 before enactment of the ordinance. Under this statute " Such commission shall make a preliminary report and hold public hearings thereon before submitting its final report, and such legislative body shall not hold its public hearings or take action until it has received the final report of such commission. " However under RSA 36:11 ( Laws 1935, 55:14 ) a " planning board shall have all powers heretofore granted by law to the zoning commission of a municipality. " It is undisputed that the city of Portsmouth had such a planning board when the 1965 and 1966 ordinances were adopted.

There was evidence that prior to the adoption of the 1965 ordinance, on January 4, 1965, the planning board conducted public hearings thereon pursuant to RSA 31:65. There was further evidence that such hearings were held on each amendment to the 1965 ordinance including the amendment adopted February 7, 1966 rezoning the Pace land from " SRL " to " LI. " The 1965 ordinance and the amendments thereto constitute essentially the 1966 ordinance in question here.

On March 4, 1966, at the city council meeting preceding its meeting of March 21 when the 1966 ordinance was adopted the following communication was received from the chairman of the planning board.

"The Planning Board at a joint meeting held February 28, 1966 with the Board of Adjustment, and in consideration of the ordinance known as the 'Revised Zoning Ordinance' [proposed 1966 zoning ordinance] voted unanimously as follows:

"Whereas the Planning Board has considered and has held public hearings on the so-called 1965 Zoning Ordinance and amendments thereto by the Planning Board, and as prescribed by the Council, the Planning Board does hereby reaffirm its votes on said Ordinance and amendments, and recommends favorable action by the City Council and Board of Adjustment."

The records of that council meeting contain the following: "Mr. Violette [City Manager] explained the new proposed ordinance to the Council and said all the amendments and revisions of the prior ordinance since it was adopted January 4, 1965 were contained therein." No question is raised as to the validity and legality of the public hearing held before the city council prior to the adoption of the 1966 ordinance. RSA 31:63 (supp).

The evident purpose of public hearings to be held by a zoning commission (RSA 31:65) or a planning board (RSA 36:11) and by the city council itself (RSA 31:63 (supp)) is to insure that the current views of local residents will be taken into account by the council when it considers the enactment of a proposed ordinance. It stands to reason that this purpose would be thwarted if an unreasonable time intervened between the hearings and the adoption of the ordinance. Cf. Gricus v. Superintendent & Inspector of Buildings of Cambridge, 345 Mass. 687 (interval of over 5 years). In the present case the planning board held duly called public hearings on the regulations, restrictions, and boundaries contained in the 1966 ordinance for a period extending from March 1964, when it considered these provisions as contained in the 1965 ordinance, to December 15, 1965 when it held a public hearing on the amendment to rezone the Pace property from "SR1" to "LB." As previously stated herein, on February 28, 1966 the planning board reaffirmed its votes on the 1965 ordinance and amendments and recommended favorable action by the city council on the 1966 ordinance which incorporated these provisions.

We hold proper the master's ruling adopted by the Trial Court "that the requirements of Chapter 31, Section 65, were met and, although a Zoning Commission was not appointed, this was not necessary because there was in existence a Planning Board with all the powers of a Zoning Commission, and this Planning Board had full authority to act."

The plaintiffs' appeal next contends that "the Zoning Ordinance of the City of Portsmouth, 1966 is invalid, illegal, and void in that prior to the public hearing and passage of the second and third readings of said ordinance no official Zoning Map setting forth location of bounds of districts were available or on file for the public in the offices of the City Clerk, Inspector of Buildings, City Manager, and the Planning Board as required by Section 19 — 103A of the so-called Zoning Ordinance of 1966."

The evidence is uncontradicted that the mayor signed a zoning map on March 22, 1966, the day after the adoption of the zoning ordinance by the city council. It is also uncontradicted that from the day after the first notice of the public hearing was published a map identical with the one signed later by the mayor was available to the public in the offices of the city clerk, building inspector, planning board, and city manager. There is no doubt that a zoning map contains important information which should be available to "parties in interest and citizens" (RSA 31:63 (supp)) a reasonable time before the public hearing to be held by the city council before the adoption or amendment of a zoning ordinance. This map should also be available at reasonable locations, those named in the ordinance being such locations. However there is no statutory requirement that such map or maps be signed by the mayor or other executive officer to make them official maps at that stage of the proceedings provided they are identified by printing thereon or otherwise as being maps referred to in the proposed ordinance.

We hold that the master properly ruled that the procedure followed in this case as to a zoning map was in substantial compliance with the statutory requirements. *McKinney* v. *Riley*, 105 N. H. 249, 252. We further hold that the zoning ordinance adopted by the city council of Portsmouth on March 21, 1966 was validly adopted. We reserve, however, for consideration hereinafter the validity of its classification as "Limited Industrial" of the 4.2 acres of Pace land located on the westerly edge of a "Single Residence 1" district of about 800 acres.

The plaintiffs' final contention is that the rezoning of the Pace property is "unreasonable, arbitrary, discriminatory and unlawful" as said rezoning constitutes "spot zoning"; it is "contrary to and in violation of the comprehensive requirement as set forth in the Master Plan of the City of Portsmouth and the Zoning Ordinance of 1966 and the enabling legislation"; it "was not done to meet any special safety or health problems and no public necessity is shown"; it "is contrary to good zoning practice"; and "there has been no substantial change in the use of the property rezoned or of the general area."

The master has made the following findings: "The area out of which the 4.2 acres was zoned Limited Industrial by the new Zoning Ordinance, consists of about 800 acres of land, which has been zoned Residential since 1951 . . . The record in this case is bare of any evidence that there was any public necessity or convenience involved in changing this particular area from a Residential Zone to a Limited Industrial Zone. There was no testimony at the hearing and there is no evidence to be found in the records of the City Council meetings and the Planning Board meetings . . . that the change would enhance and promote the development of the community as a whole. The only evidence is that the re-zoning would be an economic benefit to Pace Industrial Corporation and meet the needs of Pace . . . for a new building at a price that Pace . . . was willing to pay.

"There was no evidence introduced either by way of documents or testimony during the hearing of any change in the character or the use of the zone. The evidence was that thirty or forty new single family homes had been built in the area during the last five years. The evidence was that the re-zoning was contrary to the intent and purpose of the Master Plan and contrary to the purpose of the Ordinance itself. The Planning Director of the City of Portsmouth stated emphatically that this re-zoning was not in conformity with good planning and good zoning. The City Council apparently considered only the needs of Pace . . . as did the Planning Board. No consideration was given by either the Planning Board or the City Council to rezoning a larger area.

"The evidence was that there was a great deal of other Limited Industrial land available in Limited Industrial Zones, that had been in existence for a considerable period of time prior to 1965. The total Limited Industrial area in the City amounted to 850 acres and, at the time of the hearing, over 690 acres were vacant and not being used."

The defendant Pace points out that over half of the 800 acres in this " SR1 " district is low, swampy land known as the " great bog " while a large area on the easterly side adjoining the bog is under the flight pattern of Pease Air Force Base. There was uncontradicted evidence, as stated by Pace, that neither the " great bog " nor the land beneath the flight pattern are presently suitable for the construction of residences. However, there was also uncontradicted evidence from this same witness that this same land is also unsuitable for any other kind of buildings including commercial or industrial. Most of it is completely unimproved without access roads for reaching the interior portions.

The planning director of the city of Portsmouth since 1956 testified that it is good zoning practice to zone such land " SR1 " if its topography and terrain, soil conditions, position in the community and the community's need for use of the land warrant it. The purpose of so doing is to permit the community to rehabilitate it at a future time and have it used for single residences or changed to a less restricted use if studies so determine. This is an accepted method of zoning. *Stone* v. *Cray*, 89 N. H. 483, 485. Unlike the situation which existed in *Kimball* v. *Blanchard*, 90 N. H. 298, 300 it cannot be said that the action of the city of Portsmouth in zoning that part of the 800 acres " SR1 " had " no substantial tendency to promote any of the purposes which proper zoning regulations are designed to secure. "

However as stated by Pace in its brief " the southern portion of this 800 acre tract is higher ground suitable for residential building as is a narrow strip on the easterly side. " There was evidence that " thirty or forty new single family homes have been built during the last five years " in this area. Other homes were there in 1951, 1952. Four residences are within a quarter of a mile of the Pace property, one within 400 feet. The Pace property has the same characteristics as the rest of this area whose general use is residential. When the Pace property was purchased most of the land abutting it in Greenland was also zoned residential.

The planning director of the city of Portsmouth testified that in November 1965 the city had 815 acres zoned limited industrial of which 690.7 acres were vacant. He further testified that the change in permitted use made concerning the 4.2 - acre Pace property in Portsmouth after its purchase by Pace on October 15, 1965 was " not within the general concept of good land use

planning"; it was "ill advised"; "not in accordance with the comprehensive plan"; "not consistent" with the stated purposes of the 1966 zoning ordinance.

It is well established law that the ordinance is presumed to be valid and that the plaintiffs have the burden of proving that the action of the city council in adopting the "LI" classification for the Pace property was "unreasonable or unlawful." RSA 31:78; *Stone* v. *Cray*, 89 N. H. 483, 488; *Rochester* v. *Barcomb*, 103 N. H. 247, 253; *Briscoe* v. *Highland Park*, 219 N. E. 2d 390, 391 ( Ill. App. 1966 ). However the action of the city council must conform to the requirements of RSA 31:60-62. *Jaffrey* v. *Heffernan*, 104 N. H. 249, 252. In other words changes in district boundaries can be justified only when they are "for the purpose of promoting health, safety, morals, or the general welfare of the community." RSA 31:60; 8 McQuillin, Municipal Corporations, *s.* 25:94, *p.* 264 ( 1965 Rev. ). Furthermore zoning regulations must be made "in accordance with a comprehensive plan" so that zoning is by districts and not by individual pieces of property. *Edgewood Civic Club* v. *Blaisdell*, 95 N. H. 244, 246; *Conery* v. *Nashua*, 103 N. H. 16, 22.

"The mere fact that the amendment zoned a small area at the request of a single owner does not of itself make the result spot zoning." *Edgewood Civic Club* v. *Blaisdell, supra.* "What is most determinative is whether the parcel in question is being singled out for treatment unjustifiably differing from that of similar surrounding land, thereby creating an 'island' having no relevant differences from its neighbors." *Appeal of Mulac*, 418 Pa. 207, 210. The adjoining property owners in the district are entitled to rely on the rule that a classification once made will not be changed unless the change is required for the public good. *Alvey* v. *Michaels*, 231 Md. 22, 26; 8 McQuillin, Municipal Corporations, *s.* 25.68, *p.* 179 ( 1965 Rev. ).

In determining whether a change is unreasonable or unlawful, the fact that it is made to a small area and is out of harmony with the comprehensive plan for the good of the community as a whole are elements to be considered. 8 McQuillin, Municipal Corporations, *ss.* 25.67 a, 25.84, *pp.* 174, 232 ( 1965 Rev. ). See *Metropolitan Homes, Inc.* v. *Town Plan & Zon. Comm.,* 152 Conn. 7, 12. Lack of public need for the zoning of a small area differently than the surrounding properties from which it has no significant or characteristic difference is also a factor

to be considered in determining the issue of whether the zoning is unreasonable or unlawful. *Edgewood Civic Club* v. *Blaisdell*, 95 N. H. 244, 246; *Conery* v. *Nashua* 103 N. H. 16, 22. The reasonableness and validity of a zoning change must be determined upon the facts and circumstances of each particular case. 8A McQuillin, Municipal Corporations, *s.* 25.282, *p.* 295.

In the present case a parcel of 9.7 acres of land was purchased by Pace on October 15, 1965. At that time the 4.2 acres situated in Portsmouth had been zoned residential since 1951 and the remainder located in Greenland was surrounded by property zoned residential with but one exception. At the request of the seller and the purchaser Pace a rezoning of the Portsmouth property to limited industrial was sought and the 1965 ordinance was so amended. The " LI " classification of the Pace property was continued in the 1966 ordinance.

This 4.2-acre parcel has the same characteristics as the surrounding area of hundreds of acres zoned " SR1 " in which the properties of the approximately 50 plaintiffs are located. There was evidence that Portsmouth had many areas zoned industrial in which the building to be built by Pace would be permitted. There was no evidence that the reclassification of the Pace property was part of an orderly and systematic scheme of planning or that there has been changes of conditions in the surrounding territory since 1951. On the contrary this area has many more residences than were there in 1951. There was also evidence that this change in zoning of the Pace property was not within the general concept of planning, was ill advised, and not in accordance with a comprehensive plan or the purposes of the zoning ordinance itself.

We hold proper the master's ruling adopted by the Trial Court "that the action of the City Council zoning the 4.2 acres as Limited Industrial was invalid, and this particular part of the Zoning ordinance is held to be of no effect. "

Pace contends however that it has acquired vested rights of which it cannot be constitutionally deprived. On May 13, 1966 the building inspector of Portsmouth issued to it a building permit authorizing the construction on its land of a factory to cost about $60,000. The evidence at the trial was that the cost will approximate $150,000 to $200,000. On May 20, 1966 and again on May 25, plaintiffs sought an injunction restraining Pace from proceeding with construction under this permit. At both hearings

thereon the Trial Court declined to issue a restraining order but advised Pace that if it proceeded with construction it was doing so at its peril.

The master found that on the date of the hearing, which started June 15, 1966, Pace had made an investment of $3,250 consisting of site work in the amount of $1,500, engineering $750, and electrical work $1,000. Pace maintains that work went forward after that date and that its financial outlays under the permit were "substantial" and "in excess" of the amount found by the master at the time of trial.

It is generally recognized that the issuance of a building permit does not alone confer any right against a later zoning change. *Shellburne, Inc.* v. *Roberts*, 224 A. 2d 250, 254 ( Del. 1966 ). However it is also generally acknowledged, and this court has so held, "that where the owner, relying in good faith upon a permit and before it has been revoked, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both, the permit may not be cancelled." *Winn* v. *Corporation*, 100 N. H. 280, 281; *Brady* v. *Keene*, 90 N. H. 99, 102; *Spindler Realty Corporation* v. *Monning*, 53 Cal. Rptr. 7, 11; *Harrisburg* v. *Pass*, 372 Pa. 318.

Pace took a "calculated risk" in going ahead with construction after the plaintiffs had twice sought restraining orders and the Trial Justice had warned it that it would be proceeding at its peril. *Spindler Realty Corporation* v. *Monning, supra.*

Considering the matter on the original estimated cost of $60,000 and more so if the cost is to be $150,000 to $200,000 we hold proper the following ruling of the master: " Under the circum-stances, and considering the fact that the Pace Industrial Corporation was aware that this was a Residential Zone àt the time the purchase was made, and was aware shortly after the passage of the ordinance that the validity of this particular zone would be attacked, the Master finds that no vested interest accrued to Pace Industrial Corporation." *Rochester* v. *Barcomb*, 103 N. H. 247, 254-255; *Winn* v. *Corporation*, 100 N. H. 280.

Since the latest classification of the Pace property as "LI" made by the 1966 zoning ordinance was invalid, the provisions of the last prior valid zoning ordinance apply to the Pace property. *Concordia Collegiate Inst.* v. *Miller*, 301 N. Y. 189, 197; 2 Rathkopf, Law of Zoning and Planning, *p*. 36-17.

The Trial Court should "remand the matter to the . . . legislative body of such municipality for such proceedings, not

inconsistent with" this opinion, "as justice may require."• RSA 31:83.

The temporary injunction issued July 5, 1966 enjoining Pace "from doing any work or allowing any work to be done on the premises described in the petition for the purpose of erecting a factory" which was continued in force by the Trial Court on July 14, 1966 is made permanent.

*Remanded.*

BLANDIN, J., sat at argument but took no part in the decision; the others concurred.