FRANK B. GODFREY, JOE N. SUTTON, O. FRED HOWEY and BILLIPS HOOD v. THE ZONING BOARD OF ADJUSTMENT OF UNION COUNTY, NORTH CAROLINA

No. 182PA85

(Filed 3 June 1986)

1. **Municipal Corporations § 30.16— grain facility not nonconforming situation**

   A grain storage facility was not a "nonconforming situation" which could legally be permitted to be continued following a judicial determination that a purported rezoning under which the facility was constructed constituted unlawful "spot zoning" because it was not in existence at the time of either the date of the zoning ordinance or the date of the purported rezoning amendment.

2. **Municipal Corporations § 30.16— nonconforming use—judicial declaration not amendment of zoning ordinance**

   A judicial declaration that a purported rezoning constituted unlawful spot zoning did not constitute an "amendment" to the zoning ordinance so as to permit a grain storage facility built in reliance upon the rezoning prior to the date of the judicial action to constitute a "nonconforming situation" which could be continued under the ordinance.

3. **Municipal Corporations § 30.15— nonconforming use—arbitrary and capricious action by zoning board of adjustment**

   A zoning board of adjustment acted arbitrarily and capriciously in reaching its conclusion allowing a grain storage facility to continue as a "nonconforming situation" where that conclusion was wholly unsupported by the facts found by the board.

4. **Municipal Corporations § 30.17— vested right to continue nonconforming use—issue not before appellate court**

   The Court of Appeals erred in addressing the issue of whether landowners acquired a "vested right" to continue a grain storage facility as a noncon-

Godfrey v. Zoning Bd. of Adjustment

forming use after rezoning which permitted the facility was judicially declared to constitute unlawful spot zoning since the "vested rights" issue was not considered by the county zoning board of adjustment or by the superior court on review by writ of certiorari; a determination of the "vested rights" issue requires resolution of questions of fact, including reasonableness of reliance, existence of good or bad faith, and substantiality of expenditures, and fact-finding is not a function of an appellate court; and the landowners are not parties to this proceeding.

5. **Municipal Corporations § 31— challenge to zoning amendment—declaratory judgment—injunction not required**

Plaintiffs were not required to attempt to obtain injunctive relief in order to protect their property interests against unlawful actions of a zoning board but could properly elect to challenge a zoning amendment through a declaratory judgment action.

Justice Exum concurring in result.

Chief Justice Branch joins in this concurring opinion.

Justice Martin dissenting.

ON discretionary review of a unanimous decision of a panel of the Court of Appeals, 73 N.C. App. 299, 326 S.E. 2d 113 (1985), affirming a judgment entered by *Hal H. Walker, J.*, at the 14 November 1983 Civil Session of Superior Court, UNION County. Heard in the Supreme Court 14 October 1985.

*Joe P. McCollum, Jr., for plaintiff-appellants.*

*Love & Milliken, by John R. Milliken, for defendant-appellee.*

MEYER, Justice.

James Dennis Rape came into ownership and possession of a 17.45-acre tract of land in Union County in 1973. The Union County Board of Commissioners adopted a comprehensive zoning ordinance on 14 April 1975, effective 2 June 1975. On the effective date of the ordinance, Mr. Rape's 17.45-acre tract was being farmed; no business other than farming was operated on this tract prior to 1980. The Rape tract and the surrounding area were zoned low density residential, R-20, by the 1975 ordinance.

On 12 September 1980, Mr. Rape petitioned the county to rezone his tract from R-20 to H-I, "heavy industrial." Mr. Rape's purpose in requesting the zone change was to enable him to construct a grain storage facility and office space on a portion of his

tract. The Union County Planning Board voted to recommend the rezoning request, and on 23 November 1980, the County Commissioners, by a vote of three to two, voted to amend the zoning ordinance to rezone the tract as requested by Rape.

Disturbed by this action, three adjoining landowners, within three weeks of the rezoning, filed an action in Superior Court, Union County, on 15 December 1980 seeking a declaratory judgment to the effect that the Commissioners' action in rezoning the Rape tract was null and void because it constituted "spot zoning." Meanwhile, Mr. Rape, pursuant to a "previous arrangement" with Gro-More of Monroe, Inc., obtained a building permit to construct the grain storage facility and began construction of the facility. Gro-More's majority shareholder is Eastern Plant Foods, Inc., of Greenville, South Carolina; Mr. Rape is president and minority shareholder of Gro-More. In May 1981, construction was completed, and pursuant to the arrangement with Gro-More, Mr. Rape transferred 4.25 acres of his 17.45-acre tract containing the grain storage facility and office space to Gro-More. Subsequent to the facility being completed and its transfer to Gro-More, and during the pendency of the action for declaratory judgment, the Union County Board of Commissioners on 25 August 1981 amended the zoning ordinance to make provision for "Nonconforming Situations" (hereinafter, Section 70).

On 11 December 1981, Judge Kivett entered an order in the declaratory judgment action declaring the Commissioners' rezoning of the Rape tract on 23 November 1980 null and void because such action constituted "spot zoning."[1] The result of this order

---

1. "Spot zoning amendments are those which by their terms single out a particular lot or parcel of land, usually small in relative size, and place it in an area the land use pattern of which is inconsistent with the small lot or parcel so placed, thus projecting an inharmonious land use pattern. Such amendments are usually triggered by efforts to secure special benefits for particular property owners, without proper regard for the rights of adjacent landowners. These are the real spot zoning situations. Under no circumstances could the tag of validity be attached thereto.

"  . . . .

"Of one thing there can be no doubt. The law is well settled that 'spot zoning,' as properly known and understood, and 'spot zoning' ordinances, as properly identified, are invalid on the general ground that they do not bear a substantial relationship to the public health, safety, moral and general welfare and are out of

was that the entire tract remained subject to the original R-20, low density residential designation. Gro-More and Eastern Plant Foods appealed to the Court of Appeals, which affirmed Judge Kivett's order in *Godfrey v. Union Co. Bd. of Commissioners*, 61 N.C. App. 100, 300 S.E. 2d 273 (1983). Pursuant to that opinion, Union County Zoning Enforcement Officer H. Steve Morton notified Mr. Rape by letter of 14 April 1983 that the Gro-More grain storage facility was not in compliance with the R-20 district in which it was located and that Mr. Rape had thirty days to bring the use into compliance.

On 4 May 1983, Gro-More and Eastern Plant Foods, by their attorney, petitioned the Union County Board of Adjustment for an allowance of the continuance of the "nonconforming situation" on the 4.26-acre tract. The Board of Adjustment held meetings on 6 June and 11 July 1983 and heard from Mr. Rape, as well as from plaintiffs in this action. Both parties were represented by counsel. On 11 July 1983, the Board of Adjustment approved Gro-More's petition allowing the facility to continue as a "nonconforming situation." Pursuant to N.C.G.S. § 153A-345(e), plaintiffs petitioned the Superior Court, Union County, for a writ of certiorari to review the Board's 11 July 1983 order. In their petition for the writ, plaintiffs stated as "Reasons Why the Writ Should Issue" that "the action of the Board of Adjustment was arbitrary and capricious in that there was no showing that a nonconforming use ever existed and further there was [sic] not sufficient findings of fact by the Board to grant any relief."

Upon the review by a superior court upon writ of certiorari issued pursuant to N.C.G.S. § 153A-345(e),

> the findings of fact made by the Board, if supported by evidence introduced at the hearing before the Board, are conclusive. *In re Application of Hasting*, 252 N.C. 327, 113 S.E. 2d 433; *In re Pine Hill Cemeteries, Inc.*, 219 N.C. 735, 15 S.E. 2d 1. The matter is before the Court to determine whether an error of law has been committed and to give relief from an

harmony and in conflict with the comprehensive zoning ordinance of the particular municipality."

2 E. Yokley, Zoning Law and Practice § 13-3 (4th ed. 1978) (footnote omitted). *See also Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E. 2d 35 (1972).

order of the Board which is found to be arbitrary, oppressive or attended with manifest abuse of authority. *Durham County v. Addison*, 262 N.C. 280, 136 S.E. 2d 600; *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E. 2d 128. It is not the function of the reviewing court, in such a proceeding, to find the facts but to determine whether the findings of fact made by the Board are supported by the evidence before the Board. It may vacate an order based upon a finding of fact not supported by the evidence.

*In re Campsites Unlimited*, 287 N.C. 493, 498, 215 S.E. 2d 73, 76 (1975). *See also Coastal Ready-Mix Concrete Co., Inc. v. Board of Comm'rs of the Town of Nags Head*, 299 N.C. 620, 623-27, 265 S.E. 2d 379, 381-83, *reh'g denied*, 300 N.C. 562, 270 S.E. 2d 106 (1980).

On 16 November 1983, Judge Hal H. Walker entered an order finding no error in the proceedings and concluding that the Board's 11 July 1983 order allowing continuation of the nonconforming use was proper. On appeal by plaintiffs, the Court of Appeals affirmed the superior court's decision in its opinion at 73 N.C. App. 299, 326 S.E. 2d 113.

The Court of Appeals recognized that, according to Union County Zoning Ordinance, Sections 70.1(1) and 70.2, the grain storage facility is not a "nonconforming use" subject to being continued because the facility was not in existence at the effective date of the ordinance or the effective date of the amendment to the ordinance rezoning the property from R-20 to H-I. However, the Court of Appeals found that the situation *became* nonconforming as a result of the subsequent judicial declaration that the purported 1980 rezoning to H-I constituted "spot zoning" and was null and void and of no effect. Additionally, the court found that Mr. Rape had incurred "great expense in constructing a large facility valued at $400,000" in "good faith reliance" upon the 1980 zoning amendment and the building permit. *Id.* at 302, 326 S.E. 2d at 115. Relying on *Town of Hillsborough v. Smith*, 276 N.C. 48, 170 S.E. 2d 904 (1969), and its progeny, the court held that "the landowner acquired a vested right to continue using the facility." *Godfrey*, 73 N.C. App. at 302, 326 S.E. 2d at 115. The Court of Appeals, adopting defendant's argument, noted that plaintiffs could have protected their interests by obtaining an injunction when they filed their petition for a writ of certiorari, and the land-

owners' interest could have been protected by means of a bond. We conclude that the reasoning and the result of the panel below is erroneous, and we therefore reverse.

A.

[1] Following public hearings on 6 June and 11 July 1983, the Union County Zoning Board of Adjustment issued an order in which it concluded that the Gro-More facility constituted a "nonconforming situation" as defined in Section 70 and was entitled to continuation pursuant to Section 70.2. Our review of the record convinces us that the Board erred as a matter of law in concluding that the subject property was a "nonconforming situation" and thus erred in allowing continuation pursuant to Section 70.2.

The 1981 amendment to the Union County Zoning Ordinance, *"Section 70. Nonconforming Situations,"* provides the framework for analysis in the determination of whether the Gro-More facility could legally be permitted to continue as such following the judicial determination that the 1980 purported zoning change under which the facility was constructed constituted unlawful "spot zoning." The relevant portions of Section 70 provide in pertinent part:

70.1 *Definitions*

(1) *Nonconforming Situation.* A situation that occurs when, *on the effective date of this ordinance or any amendment to it,* an existing lot or structure or use of an existing lot or structure does not conform to one or more of the regulations applicable to the district in which the lot or structure is located. Among other possibilities, a nonconforming situation may arise because . . . land or buildings are used for purposes made unlawful by this ordinance.

. . . .

70.2 *Continuation of Nonconforming Situations*

Nonconforming situations that were otherwise lawful on the effective date of this ordinance may be continued, subject to the restrictions and qualifications set forth in subsections 70.3 and 70.6 of this section.

(Emphasis added.)

By clear definition, a situation may be designated "nonconforming" for purposes of continuation under the ordinance only if it is an *existing lot or structure on the effective date of the ordinance or amendment.* Section 70.1(1). According to the record, the effective date of the comprehensive zoning ordinance was 2 June 1975. On that date, the entire Rape tract was being farmed, and *no* structure was in existence on the property. The effective date of the amendment purporting to rezone the tract from R-20 to H-I was 23 November 1980. It is uncontroverted that *no* structure existed on the tract on that date. In fact, the 1980 amendment was enacted for the sole purpose of accommodating Mr. Rape's plan to erect the structure which is the subject of this controversy. Mr. Rape acquired a building permit and began construction some time *after* 23 November 1980; the facility was completed in May 1981. Thus, as the Court of Appeals recognized, the grain storage facility fails to come within the Section 70.1(1) definition of a "nonconforming situation" because *it was not in existence* at the time of either the date of the ordinance or the date of the purported amendment to it. "Before a supposed nonconforming use may be protected, it must exist somewhere outside the property owner's mind." *Cook v. Bensalem Township Bd. of Adjustment,* 413 Pa. 175, 179, 196 A. 2d 327, 330 (1964).

The plain meaning of Section 70, as applied to these facts, is that the grain storage facility is not a "nonconforming situation" as defined by Section 70.1(1) and therefore cannot be "continued" pursuant to Section 70.2. Thus, the superior court erred in failing to conclude that the Board committed an error of law in authorizing the continuance of the Gro-More facility.

[2] Defendant argues, however, that there is another relevant "effective date of . . . amendment" to the ordinance prior to which the Gro-More structure had come into existence. Defendant contends that the superior court order of 11 December 1981, affirmed by the Court of Appeals in *Godfrey v. Union Co. Bd. of Commissioners,* 61 N.C. App. 100, 300 S.E. 2d 273, amounted to a "judicial amendment" of the zoning ordinance because its effect was to rezone the tract from the H-I "spot zoning" designation back to the original R-20. Defendant contends that the facility, completed in May 1981, was in existence on the effective date of the December 1981 "judicial amendment" to the zoning ordinance and therefore constitutes a "nonconforming situation" as defined

in Section 70.1(1), entitled to continuance pursuant to Section 70.2. This argument is without merit.

"The courts do not possess the power to amend the zoning regulations." 1 R. Anderson, American Law of Zoning 2d § 4.26 (1976) (footnote omitted). "While the courts possess the authority to pass upon the validity of a zoning ordinance, this authority does not include the power to determine the ultimate zoning classification." *La Salle Nat'l Bank v. City of Chicago*, 130 Ill. App. 2d 457, 460, 264 N.E. 2d 799, 801 (1970). *See also Petlin Associates, Inc. v. Township of Dover*, 64 N.J. 327, 316 A. 2d 1 (1974). Zoning is properly a legislative function, and courts are prevented by the doctrine of separation of powers from invasions of this field. *City of Miami Beach v. Weiss*, 217 So. 2d 836, 837 (Fla. 1969); *Board of Supervisors of Fairfax County v. Allman*, 215 Va. 434, 445, 211 S.E. 2d 48, 55, *cert. denied*, 423 U.S. 940, 46 L.Ed. 2d 272 (1975); 1 R. Anderson, American Law of Zoning 2d § 4.26 (1976); 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 36.01 (4th ed. 1986).

"[A]n unconstitutional amending statute or ordinance is in reality no law and, in legal contemplation, is as inoperative as if it had never been passed." 2 E. Yokley, Zoning Law and Practice § 11-8 (4th ed. 1978), citing *Archer v. City of Shreveport*, 226 La. 867, 77 So. 2d 517 (1955); *City of New Orleans v. Levy*, 223 La. 14, 64 So. 2d 798 (1953), and cases cited therein.

The act of a municipal legislative body which purports to enact or amend a zoning ordinance but which in fact amounts to an unconstitutional "spot zoning" is beyond the authority of the municipality. *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E. 2d 35 (1972). "If the amending ordinance is beyond the legislative power of the city, whether for the reason that it constitutes spot zoning or on some other ground, its adoption does not remove the designated area from the effect of the comprehensive zoning ordinance previously enacted. In that event, *the proposed use remains unlawful.*" *Zopfi v. City of Wilmington*, 273 N.C. 430, 437, 160 S.E. 2d 325, 333 (1968).

We do not accept defendant's argument that upon "judicial amendment" of the ordinance, the grain storage facility, completed seven months earlier, became a "nonconforming situation" because it was in existence on the date of the 1981 superior court

order declaring the 1980 amendment to constitute unlawful "spot zoning." "While a use of land or a building may become nonconforming through circumstances other than the enactment of a zoning restriction causing the use or building to violate the ordinance, nonconformities so caused are not included in the class of protected nonconforming uses or structures." 4 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 51.01[1] (4th ed. 1986). The December 1981 order of the superior court, affirmed by the Court of Appeals, did not constitute an "amendment" to the Union County Zoning Ordinance. The effect of the order was to declare the 23 November 1980 act of the Commissioners null and void as being beyond the authority of that legislative body. The result left the zoning ordinance as it would have been had the purported rezoning never taken place. Consequently, the provisions of the last prior valid zoning ordinance continued to apply to the tract, and thus the property remained subject to the R-20 zone restrictions. *See Harris Trust & Sav. Bank v. Duggan*, 105 Ill. App. 3d 839, 847, 435 N.E. 2d 130, 137 (1982), *aff'd*, 95 Ill. 2d 516, 449 N.E. 2d 69 (1983); *In re Concordia Collegiate Inst. v. Miller*, 301 N.Y. 189, 197, 93 N.E. 2d 632, 636 (1950); 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 36.02 (4th ed. 1986).

[3] Finally, the superior court could have found that the action of the Board in entering its 11 July 1983 order was "arbitrary, oppressive, or capricious" or was attended with an abuse of discretion. The Board's "findings of fact" in no way support its conclusions and order which consist, in their entirety, of the following:

The Zoning Board of Adjustment for Union County having held a public hearing on June 6, 1983, which was continued until July 11, 1983, to consider the petition for Gro-More of Monroe, Inc., for the continuation of a Nonconforming Situation as provided in Sec. 70.2 of the Union County Zoning Ordinance as will be more fully shown in the petition filed herein and having heard all of the evidence and arguments presented at said hearings, makes specific findings as follows:

(a) That the subject property was zoned R-20 in September of 1980 when a petition to rezone to H-I was filed.

(b) That in November of 1980 the Union County Board of Commissioners rezoned the subject property to H-I.

(c) That subsequent to said rezoning the then owner obtained a building permit and constructed on the site a grain storage and transfer facility and the offices that go with it at considerable expense.

(d) That in March of 1983, subsequent to the completion of the above construction, the North Carolina Court of Appeals affirmed a Superior Court order that the rezoning was "spot zoning" and therefore invalid.

That the Board concludes from the above findings that a Nonconforming Situation exists with respect to the subject property in accordance with Section 70 of the Union County Zoning Ordinance and that it is entitled to continuation under Section 70.2.

This 11th day of July, 1983.

THE ZONING BOARD OF ADJUSTMENT

G. C. Funderburk, Jr.
Charles J. Haywood

Sam Duncan
Edd M. Little

A determination made by a board of adjustment at a hearing, if not supported by substantial evidence, constitutes an "abuse" of the discretion vested in the board by ordinance or statute; a determination which is not supported by substantial evidence is an arbitrary decision. *Cf. Coastal Ready-Mix Concrete Co., Inc. v. Board of Comm'rs of the Town of Nags Head*, 299 N.C. 620, 265 S.E. 2d 379, *reh'g denied*, 300 N.C. 562, 270 S.E. 2d 106 (1980) (decisions of town boards regarding special use permits must be supported by "competent, material and substantial evidence in the whole record"). *Accord In re Application of Goforth Properties*, 76 N.C. App. 231, 233, 332 S.E. 2d 503, 504 (1985). A decision which lacks a rational basis—where there is no substantial relationship between the facts disclosed by the record and conclusions reached by the board—is also termed "arbitrary." 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 42.07[1] (4th ed. 1986).

The "findings of fact" recited in the Board's 11 July 1983 order are undisputed and are fully supported by the record. Yet these findings neither support the Board's conclusion nor relate to the crucial questions before the Board in determining whether the grain storage facility was "in existence" and was "otherwise lawful" on the relevant dates. Because there is no substantial relationship between the findings of fact and the Board's conclusions, the Board's 11 July 1983 decision was arbitrary and capricious, and the trial court erred in failing to so find.

In summary, therefore, defendant's order of 11 July 1983 is facially erroneous as a matter of law because the grain storage facility was not a "nonconforming situation" as defined in the Union County Zoning Ordinance on the effective date of the ordinance or any amendment to it. Furthermore, defendant may not rely on the judicial action invalidating its purported rezoning as amounting to an "amendment" of the ordinance before the effective date of which the grain storage operation was in existence so as to constitute a "nonconforming situation" (Section 70.1(1)) which may be continued pursuant to Section 70.2. The judicial declaration could not and did not constitute an "amendment" to the zoning ordinance. Moreover, we find that, as a matter of law, defendant acted arbitrarily and capriciously in reaching its conclusion allowing a continuance of the "nonconforming situation" because that conclusion is wholly unsupported by facts as found by defendant.

The Court of Appeals erred in concluding that the superior court judge correctly determined there was no error as a matter of law in the Zoning Board of Adjustment's order allowing continuance of the "nonconforming situation" pursuant to Section 70.2.

B.

[4] Defendant Zoning Board of Adjustment argued before the Court of Appeals, and the panel below concluded, that Mr. Rape acquired a "vested right" in the continued use of the grain storage facility because the permit was issued and construction had been completed after the property had been rezoned from R-20 to H-I and before that rezoning was declared unlawful "spot zoning."

The record before us contains no indication that there was ever any attempt to present the "vested rights" issue to the Zon-

ing Board of Adjustment or that the Board ever considered the doctrine of "vested rights" as a ground for allowing the continuance of the grain storage facility in contravention of the zoning district regulations to which it was subject. The Board based its decision solely on its interpretation of the zoning ordinance and the effect of the later judicial determination that the amendment was "spot zoning." The 11 July 1983 order of the Board clearly states that it purported to allow continuance of the "nonconforming situation" "under Section 70.2." Nor is there any indication that the trial court, reviewing the order upon writ of certiorari, ever considered the "vested rights" issue, limited as it was to review for errors of law appearing on the face of the record. Yet, the Court of Appeals' panel below based its decision on the "vested rights" doctrine which appears to have been raised for the first time before that court.

Succinctly stated, "[a] lawfully established nonconforming use is a vested right and is entitled to constitutional protection." 4 E. Yokley, Zoning Law and Practice § 22-3 (4th ed. 1979). The "vested rights" doctrine has evolved as a constitutional limitation on the state's exercise of its police power to restrict an individual's use of private property by the enactment of zoning ordinances. The doctrine is rooted in the "due process of law" and the "law of the land" clauses of the federal and state constitutions. U.S. Const. amend. XIV, § 1; N.C. Const. art. I, § 19.

It has been said that the solution to the "vested rights" question

has required the reconciliation of the doctrine of separation of powers with the constitutional requirements of substantive due process, a balancing of the interests of the public as a whole and those of the individual property owners, and, in many cases, the elements of good faith and bad faith and resort to equity and equitable principles.

4 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 50.01 (4th ed. 1986).

The multi-faceted, constitutionally based "vested rights" issue was not properly addressed by the panel below. In *Sherrill v. Town of Wrightsville Beach*, 76 N.C. App. 646, 334 S.E. 2d 103 (1985), the Court of Appeals properly refused to address the peti-

tioner's challenge to the constitutionality of a particular zoning ordinance when the issue was not addressed by the local board or by the superior court on review by writ of certiorari. A unanimous panel wrote:

> These arguments are not properly before us. G.S. 160A-388(e) states in pertinent part: "Every decision of the board [of adjustment] shall be subject to review by the superior court by proceedings in the nature of certiorari." The board of aldermen, sitting in their quasi-judicial capacity as the board of adjustment in this case, only had the authority to grant or deny a variance under the zoning ordinance. G.S. 160A-388(d); [*Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E. 2d 128 (1946)]. The Board's decision was to deny the variance. Under G.S. 160A-388(e) the superior court, and hence this Court through our derivative appellate jurisdiction, had the statutory power to review only the issue of whether the variance was properly denied. The constitutionality of the zoning ordinance is a separate issue not properly a part of these proceedings since the denial of the variance request never addressed the validity of the zoning ordinance. Furthermore, the superior court sat in the posture of an appellate court, *see Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 265 S.E. 2d 379, *rehearing denied*, 300 N.C. 562, 270 S.E. 2d 106 (1980), so it was not in a position to address constitutional issues that were not before the board.

*Id.* at 649, 334 S.E. 2d at 105.

Moreover, a determination of the "vested rights" issue requires resolution of questions of fact, including reasonableness of reliance, existence of good or bad faith, and substantiality of expenditures. *See, e.g., Town of Hillsborough v. Smith*, 276 N.C. 48, 170 S.E. 2d 904 (1969); *Warner v. W & O, Inc.*, 263 N.C. 37, 138 S.E. 2d 782 (1964). Fact finding is not a function of our appellate courts.

Nor was it appropriate in this context for the panel below to affirm the decision of the Zoning Board of Adjustment by substituting for its basis a legal theory not relied upon by the Board.

> [A] court cannot affirm the administrative action of a board by substituting its own premises in sustaining that action for

those which served as the basis of the agency's action. "[A] reviewing court, in dealing with the determination . . . which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." (*Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, [91 L.Ed. 1995, 1999 (1947)]; *Burlington Truck Lines v. United States*, 371 U.S. 156, 168-169, 83 S.Ct. 239, [246], 9 L.Ed. 2d 207, [216 (1962)]; *Matter of Barry v. O'Connell*, 303 N.Y. 46, [50,] 100 N.E. 2d 127 [129 (1951)]. *Golisano v. Town Board* [of the Town of Macedon], 31 A.D. 2d 85, [---,] 296 N.Y.S. 2d 623, 626 (1968).

3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 42.07[3] (4th ed. 1986). *Accord De Maria v. Enfield Planning and Zoning Comm'n*, 159 Conn. 534, 541, 271 A. 2d 105, 109 (1970). "Nor may the board whose determination is being reviewed urge grounds for affirmance other than and additional to those set forth in its decision." 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 42.07[3] n. 38 (4th ed. 1986). *See Bernstein v. Board of Appeals, Village of Matinecock*, 60 Misc. 2d 470, ---, 302 N.Y.S. 2d 141, 147 (1969).

We also note that the landowners are not even parties to this proceeding. Only the petitioners, Frank B. Godfrey, Joe N. Sutton, O. Fred Howey, and Billips Hood, on the one hand, and the respondent, the Union County Zoning Board of Adjustment, on the other, are parties to the judicial review of the latter's decision. No judicial determination of the good faith issue necessary to a "vested rights" analysis can bind one whose good faith is in question if that person is not a party to the judicial proceedings which result in the determination.

Whether the landowners may maintain the facility under the "vested rights" doctrine is not a question which is presented in this proceeding.[2] The Court of Appeals erred in addressing the "vested rights" issue.

2. We acknowledge the dissent of Justice Martin in which it is contended that the "vested rights" issue was properly presented and should be resolved in this

## C.

[5]　We disagree with the suggestion of the panel below that plaintiffs and others similarly situated must resort to obtaining or

---

opinion. The dissent suggests that the issue should be resolved in Mr. Rape's favor, though he is not a party to this action. While we do not reach the "vested rights" issue, we would point out that if that issue is litigated at some future date, the outcome is not so certain as suggested in the dissent.

Our research has revealed no case directly on point in this state, but there is persuasive reasoning in several reported decisions from other jurisdictions which would support a different result.

In *Omaha Fish & Wildlife Club, Inc. v. Community Refuse Disposal, Inc.*, 213 Neb. 234, 329 N.W. 2d 335 (1983), the Nebraska Supreme Court refused to apply the doctrine of "vested rights" for the benefit of defendant landowner. That court found that expenditures made by defendant with knowledge that a lawsuit had been filed challenging his proposed use were not made in good faith.

In an analogous situation, the Supreme Court of Hawaii held that a resort developer proceeded at his own risk where he made expenditures despite notice that a petition had been certified for a public referendum which would (and, when passed, did) prohibit the proposed use. The court refused to apply the "vested rights" or "equitable estoppel" doctrines to allow property rights to vest. *County of Kauai v. Pacific Std. Life Ins.*, 65 Haw. 318, 653 P. 2d 766, *appeal dismissed*, 460 U.S. 1077, 76 L.Ed. 2d 338 (1982).

In *Bosse v. City of Portsmouth*, 107 N.H. 523, 226 A. 2d 99 (1967), the Pace Industrial Corporation had successfully persuaded the local administrative body to rezone its particular tract from residential to light industrial. Adjoining landowners had sought two injunctions to prevent the proposed use, and during the hearings, the trial court had twice warned Pace that it proceeded with construction at its own peril. The New Hampshire Supreme Court held that the designation change procured by Pace constituted unlawful "spot zoning" and stated that Pace had taken a "calculated risk" in proceeding with construction after plaintiffs had twice instituted legal proceedings seeking to enjoin the construction. Quoting from the Master's order below, the court went on to note:

> "'Under the circumstances, and considering the fact that the Pace Industrial Corporation was aware that this was a Residential Zone at the time the purchase was made, and was aware shortly after the passage of the ordinance that the validity of this particular zone would be attacked, the Master finds that no vested interest accrued to Pace Industrial Corporation.'"

*Id.* at 532, 226 A. 2d at 107.

Finally, in an often-cited Florida Supreme Court case, *Sakolsky v. City of Coral Gables*, 151 So. 2d 433 (Fla. 1963), that court held that knowledge by a developer that a political contest in which the success of certain candidates might alter the voting pattern of the municipal body did not prevent good faith reliance on an act of the current governing body. However, the court was careful to point out that

> "[t]he effect of pending litigation directly attacking the validity of a permit or zoning ordinance, or the effect of an eventual determination that such permit

attempting to obtain injunctive relief in order to protect their property interests against unlawful actions of a zoning board. Plaintiffs were well within their rights in electing to challenge the 1980 amendment through a declaratory judgment action rather than attempting, possibly in vain, to raise sufficient bond in order to procure an injunction.

> A suit to determine the validity of a city zoning ordinance is a proper case for a declaratory judgment. G.S. 1-254; *Woodard v. Carteret County,* 270 N.C. 55, 153 S.E. 2d 809. The plaintiffs, owners of property in the adjoining area affected by the ordinance, are parties in interest entitled to maintain the action. *Jackson v. Board of Adjustment,* 275 N.C. 155, 166 S.E. 2d 78; *Zopfi v. City of Wilmington,* 273 N.C. 430, 160 S.E. 2d 325.

---

was invalid, may present a very different problem. The decision in the instant case was not rested on any showing that petitioner, at the time he acted in reliance on the permit granted him, was a party defendant in legal action directly attacking its validity, that he had any notice that his permit might have been invalid in its inception, or that its revocation was in fact required in the public interest."

*Id.* at 436 (footnote omitted). *See generally* Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes,* 1971 Urban L. Ann. 63, 80.

A trial court could conclude that application of the "vested rights" doctrine is inappropriate on the facts of this case and hold that when the landowner here incurred expenses with the knowledge that a lawsuit had been filed challenging the validity of the zoning ordinance amendment under which the landowner had obtained his building permit, he proceeded at his peril and thereby acquired no vested rights in the use of the property which is prohibited as a result of a judicial declaration that the ordinance amendment was invalid. In such a situation, it could not be said that the landowner had expended funds in good faith and in reasonable reliance upon a building permit issued pursuant to the challenged amendment.

It is entirely conceivable that a trial court could find that when, in the case at bar, Mr. Rape applied for rezoning in September 1980, he knew that the proposed grain storage facility was not permitted in the R-20 zone; that at the time the Board voted to rezone the property from R-20 to H-I, Mr. Rape knew of the substantial opposition and of the narrow three to two vote in favor of his application; that Mr. Rape knew that, within three weeks of the purported rezoning, the adjoining property owners had filed suit in superior court seeking to nullify the rezoning action by the Board on the basis that the action constituted unlawful "spot zoning"; that, with full knowledge of the pending suit, Mr. Rape obtained a building permit and began construction of the grain storage facility—and thus conclude that he did so at his own risk.

*Blades v. City of Raleigh*, 280 N.C. 531, 544, 187 S.E. 2d 35, 42. *See also* 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 35.01[1] (4th ed. 1986).

The adjoining property owners should not be called upon to suffer to protect the financial investment of one who acts at his own peril with forewarning of the possible consequences. If the law were otherwise, there would be no protection from a zoning board which, unlike the situation before us, might act from purely corrupt motives. If one, in a situation such as the one at bar, could be assured that a major investment would be protected regardless of the outcome of his gamble, a comprehensive zoning ordinance would offer little or no protection to those who have relied upon that ordinance.

The ultimate result in cases such as this may indeed be harsh. As this Court said in *City of Raleigh v. Fisher*, 232 N.C. 629, 61 S.E. 2d 879 (1950):

> Undoubtedly this conclusion entails much hardship to the defendants. Nevertheless, the law must be so written; for a contrary decision would require an acceptance of the paradoxical proposition that a citizen can acquire immunity to the law of his country by habitually violating such law with the consent of unfaithful public officials charged with the duty of enforcing it.

*Id.* at 635, 61 S.E. 2d at 902.

Though the result be harsh, it cannot be said that Mr. Rape was totally unfamiliar with the possible consequences of his actions. In *Atkins v. Zoning Board of Adjustment of Union County*, 53 N.C. App. 723, 281 S.E. 2d 756 (1981), the same James Dennis Rape had made additions to his grain storage and fertilizer sales facility at another location in Union County without obtaining the necessary permits after having his petition to rezone the property to H-I denied in 1978. There, as here, Mr. Rape had attempted to have additions to his operations in Union County declared to be a nonconforming use. The Court of Appeals, in an opinion by Becton, J., held that the Union County Zoning Board of Adjustment had no authority to grant Mr. Rape a Class A nonconforming status to uses and structures Rape added to his agricultural supply business where these new uses and structures were un-

lawful at their inception because they were begun after the effective date of the zoning ordinance and because no building permit was issued. In addition, the Board was without authority to grant Class A nonconforming use status to proposed uses and structures which were not in being at the time Mr. Rape filed his petition for Class A nonconforming status. Although the *Atkins* case arose prior to the 1981 Section 70 amendments to the Union County Zoning Ordinance relevant to this case, the law governing the establishment of nonconforming use status (lawfully in existence at the effective date of the ordinance or amendment) is essentially the same.

In summary, then, we hold that the Court of Appeals erred in affirming the order of the superior court finding no error in the 11 July 1983 order of the Union County Zoning Board of Adjustment which purported to allow a continuance of the Gro-More "nonconforming situation." Accordingly, we reverse the decision of the Court of Appeals and remand the action to that court for further remand to the Superior Court, Union County, with instructions to vacate its order of 16 November 1983 and to enter an order not inconsistent with this opinion.

Reversed and remanded.

Justice MARTIN dissenting.

I cannot concur in the majority opinion. The majority states that because the $400,000 grain facility did not exist on 2 June 1975, when the zoning law was effective, or on 23 November 1980, when the owners' property was rezoned to H-I, it cannot be a nonconforming use. This narrow interpretation of the zoning law overlooks basic legal principles and in effect leaves the landowners without a remedy, and defeats the interests of the people of Union County as expressed by their zoning board of adjustment.

When the county commissioners rezoned the subject property to H-I, heavy industrial, on 23 November 1980, the landowners had a right to rely upon the validity of the ordinance. They were not obligated to delay the lawful use of their property until the uncertain conclusion of a lawsuit on 1 March 1983, more than two years after the rezoning.

Amendments to zoning ordinances are presumed to be valid, and parties who assert their invalidity bear the burden of proof. *Allgood v. Town of Tarboro*, 281 N.C. 430, 189 S.E. 2d 255 (1972); *Heaton v. City of Charlotte*, 277 N.C. 506, 178 S.E. 2d 352 (1971). Having a valid building permit based upon a valid amendment to the zoning ordinance, the owners in good faith constructed a grain storage facility upon the property, at a cost in excess of $400,000.

The decision of the Court of Appeals declaring the amendment to the zoning ordinance to be null and void had the effect of rezoning the subject property to R-20. While it is true that the courts do not have the authority to zone real property, the action of the Court of Appeals in this case had that *effect*. Otherwise, the bizarre result would obtain whereby the subject property would be free of *all* zoning restrictions. As the majority states, the result of the order was that "the entire tract remained subject to the original R-20" zoning.

I can see no difference in the result reached, whether the property is rezoned by the county or whether the decision of the Court of Appeals resulted in a change in the zoning of the property. By either means the H-I zoning was eliminated and the owners' present utilization of the property was recognized by the zoning board of adjustment as a valid nonconforming use.

Under the facts of this case, in determining that the landowners were entitled to a nonconforming use permit under the ordinance, the Board necessarily had to find that the issuance of the permit was valid under the "vested rights" doctrine.

The issuance of the building permit alone created no vested right; it merely authorized the owners to act. But where the owners in good faith exercised their privilege granted by the permit at a time when the act was lawful, they will be protected. *Warner v. W & O, Inc.*, 263 N.C. 37, 138 S.E. 2d 782 (1964).

> The law accords protection to nonconforming users who, relying on the authorization given them, have made substantial expenditures in an honest belief that the project would not violate declared public policy. It does not protect one who makes expenditures with knowledge that the expenditures are made for a purpose declared unlawful by duly enacted ordinance.

*Id.* at 43, 138 S.E. 2d at 786-87.

This Court also held:

> It is the rule in this State that *the issuance* of a building permit, to which the permittee is entitled under the existing ordinance, creates no vested right to build contrary to the provisions of a subsequently enacted zoning ordinance, unless the permittee, acting in good faith, has made substantial expenditures in reliance upon the permit at a time when they did not violate declared public policy. . . . When, at the time a builder obtains a permit, he has knowledge of a pending ordinance which would make the authorized construction a nonconforming use and thereafter hurriedly makes expenditures in an attempt to acquire a vested right before the law can be changed, he does not act in good faith and acquires no rights under the permit.

*Keiger v. Board of Adjustment*, 281 N.C. 715, 719, 190 S.E. 2d 175, 178 (1972) (citations omitted). In so holding, this Court implicitly recognized that the substantial economic value of the improvement to the property justifies the continued existence of the facility as a nonconforming use.

Here, there is no evidence that the owners did not act in good faith. The owners were issued the building permit prior to the institution of the declaratory judgment action seeking to invalidate the amendment to the zoning ordinance. The construction of the grain storage facility was completed in May 1981, seven months before the decision of the superior court and almost two years before the filing of the Court of Appeals decision, 1 March 1983, that declared the amendment to be null and void. It is to be noted that the Court of Appeals did not declare that the amendment was void ab initio, but accorded the amendment its proper presumption of validity and affirmed the judgment of the trial court "that the rezoning . . . is declared null and void and of no effect." *Godfrey v. Union Co. Bd. of Commissioners*, 61 N.C. App. 100, 103, 300 S.E. 2d 273, 275 (1983).

Certainly, the facility itself and the expenditure of at least $400,000 is substantial in amount. The owners had no way to predict whether the lawsuit would be pursued to judgment, much less what the outcome of the case would be.

Plaintiffs could have protected their interests in the declaratory judgment action by obtaining an injunction prohibiting the

owners from constructing pursuant to their building permit. A concomitant bond would have protected the rights of the owners, who were parties to the declaratory judgment action. By so doing, the present litigation probably would not have been necessary.

I conclude that the facts of this appeal are within the holding of this Court in *Town of Hillsborough v. Smith*, in which Justice Lake, speaking for the Court, stated:

> We, therefore, hold that one who, in good faith and in reliance upon a permit lawfully issued to him, makes expenditures or incurs contractual obligations, substantial in amount, incidental to or as part of the acquisition of the building site or the construction or equipment of the proposed building for the proposed use authorized by the permit, may not be deprived of his right to continue such construction and use by the revocation of such permit, whether the revocation be by the enactment of an otherwise valid zoning ordinance *or by other means* . . . .

276 N.C. 48, 55, 170 S.E. 2d 904, 909 (1969) (emphasis added). I submit that "by other means" includes the changing of a zoning ordinance by court action, such as occurred in our case. The court action caused a change in the zoning ordinance of Union County to the same effect and degree as would be done by an amendment to the ordinance.

The majority refuses to address the "vested rights" issue, arguing that it is not properly before us. All parties relied upon and argued the issue. The board of adjustment did indeed consider the "vested rights" doctrine without referring to it by name. The Board found: "That subsequent to said rezoning [to H-I] the then owner obtained a building permit and constructed on the site a grain storage and transfer facility and the offices that go with it at considerable expense." In affirming the decision of the Board, the superior court approved this finding. The issue was then squarely presented to the Court of Appeals and this Court. Under these circumstances, I find that the "vested rights" issue has been properly presented to this Court by the parties and that we should resolve it.

Although the majority holds that the Court of Appeals erred in addressing the "vested rights" issue, it devotes four and one-

Godfrey v. Zoning Bd. of Adjustment

half pages to a discussion of the doctrine. My Brother Meyer thereafter includes a three-page footnote analyzing the issue with respect to this appeal and predicting that if the issue "is litigated," it will probably be determined in the plaintiffs' favor. It thus appears that the majority has in effect decided the "vested rights" issue, all the while denying the propriety of such action.

The zoning board of adjustment held that the owners' use of the property was a nonconforming use and was entitled to continuation under the zoning ordinance of Union County. The superior court and the Court of Appeals affirmed this holding. I vote to affirm the decision of the Court of Appeals and allow this nonconforming use to continue.

Justice EXUM concurring in result.

I concur in the result reached by the Court on the nonconforming use issue for all the reasons stated in Justice Meyer's opinion. I also agree with the Court's conclusion that this is the only question before us. The majority rightly concludes that whether the landowner can ultimately establish in a proper proceeding that he acted in good faith in constructing his building and may have thereby acquired a vested right to maintain it are questions we should not now decide. For cases discussing this doctrine see *In re Campsites Unlimited*, 287 N.C. 493, 215 S.E. 2d 73 (1975); *Town of Hillsborough v. Smith*, 276 N.C. 48, 170 S.E. 2d 904 (1969).

I write only to disassociate myself from what I perceive to be an unwarranted suggestion in footnote 2 and Part C of the Court's opinion. These portions of the opinion seem to suggest that the landowner will not be able to demonstrate in a future proceeding his "good faith" merely because a declaratory judgment action challenging his right to build under the amended ordinance had been filed against him before he began construction. This has not yet been declared the law in North Carolina, and I do not wish to say nor imply now that it should or should not be. I am satisfied the existing lawsuit should be one circumstance to be considered, probably among others, on the issue of the landowner's good faith; but I doubt that it should be controlling on

the question. In any event, I think the question should be left for the future.

Chief Justice BRANCH joins in this concurring opinion.