Merrimack,
No. 5646.

### JAMES B. SCHADLICK *& a.*

*v.*

### CONCORD *& a.*

Argued September 7, 1967.
Decided October 31, 1967.

*Perkins & Perkins* ( *Mr. Harold W. Perkins* orally ), for the plaintiffs.

*Upton, Sanders & Upton* and *Ernest T. Smith* ( *Mr. Smith* orally ), for Royal Grant, Inc.

*Charles F. Keeley,* city solicitor, for the city of Concord, filed no brief.

GRIMES, J. The plaintiffs contend first that the ordinance is invalid because after notice of the public hearing was published, the description of the area rezoned was changed without further publication.

The ordinance as originally submitted described the area as follows: "Beginning at a point in the center of Ormond Street approximately 230 feet northerly of the intersection of Ormond Street with Prescott Street, which point is also on the boundary line of a general residence area as it now exists; thence northerly

by the center line of Ormond Street and a straight line extension thereof, to Sugar Ball embankment; thence easterly by the top of Sugar Ball embankment to a point where said embankment intersects a line drawn parallel to and 130 feet westerly of the westerly line of Eastside Drive; thence southerly by said line drawn parallel to and 130 feet westerly of the westerly line of Eastside Drive to a point which is on an easterly extension of the center line of Christian Avenue; thence easterly by said center line extension of Christian Avenue to the center line of Eastside Drive; thence southerly along the center line of Eastside Drive to a point 100 feet northerly of the northerly line of Burns Avenue; thence westerly by a line parallel to and 100 feet northerly of the northerly line of Burns Avenue and in a straight line extension of said line to the point of beginning."

At the February 14, 1966 meeting of the board of aldermen, the proposed ordinance was referred to the Concord planning board for investigation and report and was tabled for a public hearing to be held at the regular meeting of the board of aldermen on March 14, 1966.

Notice of the public hearing, which included the boundary lines as contained in the proposed ordinance, was published in a newspaper of general circulation in Concord on February 17, 1966 and copies were posted in the city hall and police station. The planning board in its report unanimously recommended the adoption of the proposed ordinance, stating that it had originally recommended this area be zoned as an apartment house district in 1963 and that events since that time further substantiated this recommendation. The planning board did, however, recommend a change in the description of the area for the sake of accuracy by substituting the words "approximately 130 feet northerly of the intersection of Ormond Street with Prescott Street, which point is also on a line which is a straight line westerly extension of the existing general residence district boundary line parallel to and 100 feet northerly . . . of Burns Avenue," in place of the words "approximately 230 feet northerly of the intersection of Ormond Street with Prescott Street, which point is also on the boundary line of a general residence area as it now exists."

This amendment was adopted and the ordinance in its amended form was passed by the board of aldermen on March 14, 1966, after the public hearing, without further notice being published.

RSA 31:63 provides for a public hearing at which parties in

interest and citizens may be heard before such an ordinance change shall become effective. The notice requirement of that section is as follows: "At least 15 days' notice of the time and place of such hearing shall be published in a paper of general circulation in such [city.]" It is not contended that notice of the time and place of the hearing was not published in accordance with the statute. While there is no specific statutory requirement that the description of the zoned area be published, a notice would be meaningless unless it included some reference to the area involved sufficient to give the reader reasonable warning that his interest may be affected.

A comparison of the ordinance as originally proposed and published with that finally enacted reveals that both descriptions describe the same property. It is clear that the westerly boundary in both descriptions is the center line of Ormond Street and its northerly extension, and that the southerly boundary is a line "parallel to and 100 feet northerly of the northerly line of Burns Avenue . . . ." extended some 600 feet to the center line of Ormond Street. It is also clear from both descriptions, each taken as a whole, that the starting point was intended to be the point where the westerly and southerly boundaries intersect in the center of Ormond Street. These boundaries are definitely ascertainable and their actual point of intersection would control over the approximate distance location of that point which the original description placed too far north and which it is claimed was placed too far south in the amended description. *Harmon* v. *Kennett Company*, 103 N. H. 219; *Driscoll* v. *Green*, 59 N. H. 101; *Hall* v. *Davis*, 36 N. H. 569. See *Pettee* v. *Chapter*, 86 N. H. 419.

There is, therefore, no variance between the property described in the notice and that which was rezoned. This ordinance was not invalid because of any want or defect in the notice of the public hearing. This also disposes of the subsidiary contention that the ordinance as enacted does not describe the area rezoned with sufficient certainty.

The plaintiffs contend that the ordinance is invalid because it constitutes "spot zoning." An area is spot zoned when it is singled out for treatment different from that of similar surrounding land which cannot be justified on the bases of health, safety, morals or general welfare of the community and which is not in accordance with a comprehensive plan. *Bosse* v. *Portsmouth*, 107 N. H. 523. The mere fact that an area is small and is zoned at the request of a single owner and is of greater benefit to him than to

others does not make out a case of spot zoning "if there is a public need for it or a compelling reason for it." *Edgewood Civic Club* v. *Blaisdell,* 95 N. H. 244, 246.

The area rezoned, except for that part of it which is owned by the State, was designated a multifamily residential area, another term for apartment house district, in the land use plan which was certified to the board of aldermen by the planning board on August 3, 1964. That portion which is owned by the State was designated by the planning board as "institutional use" which permits use for office buildings, dormitories, and similar uses compatible with apartment home use. The area is situated in the "Concord Heights" area and lies a few hundred feet northerly of Loudon Road which is the Route 4 entrance to the city. Both sides of Loudon Road are classified as business districts. Just easterly of the rezoned area, there exists a substantial apartment house complex which has been built in recent years, known as Lexington Manor, and also an older apartment building, known as Eastern Apartments. Within the rezoned area, there is a substantial apartment house complex for the aged being constructed by the New Hampshire Conference of the United Church of Christ under a variance granted in September 1965, authorizing construction of eight apartment buildings, an administration building, and a forty-eight bed nursing home, all on an eight-acre tract.

There was evidence of a growing need for garden-type apartment house dwellings in Concord and that it is very difficult to find suitable space for them under existing zoning. The planning director testified that the land previously zoned agricultural was so zoned to hold it for future rezoning as conditions warranted and that in his opinion the land in the rezoned area was more appropriate for apartment house use.

The burden is upon the plaintiffs to prove that the action of the board of aldermen was "unreasonable or unlawful." RSA 31:78. The evidence did not warrant a finding that the action of the board of aldermen constituted spot zoning or was otherwise unreasonable or unlawful, and the Trial Court was correct in dismissing the appeal.

*Exceptions overruled.*

GRIFFITH, J., did not sit; the others concurred.