Rockingham
No. 82-536

STONEY–BROOK DEVELOPMENT CORPORATION

v.

TOWN OF FREMONT

March 2, 1984

584

*Casassa, Mulherrin & Ryan,* of Hampton (*John J. Ryan* on the brief and orally), for the plaintiff.

*Holland, Donovan, Beckett & Welch,* of Exeter (*Robert B. Donovan* on the brief, and *Stephen Hermans* orally), for the defendant.

BROCK, J. On November 2, 1982, a Master (*R. Peter Shapiro,* Esq.) found that the "Comprehensive Community Plan" of the defendant, Town of Fremont, is not a legally sufficient master plan

or capital improvement program to support the adoption of a growth control ordinance enacted under RSA 31:62-a (Supp. 1983) (repealed by Laws 1983, 447:5, I) (current version at RSA 674:22 (Supp. 1983)). The master further recommended that the town's growth control ordinance (Article IV-A of the Fremont Zoning Ordinance) should be deemed illegal and unenforceable. The Superior Court (*Wyman*, J.) approved the master's report on November 4, 1982, and Fremont appealed. For the reasons which follow, we affirm.

In 1975, Fremont enacted Article IV-A of its zoning ordinance which states in pertinent part:

> "*Section 1.* The number of building permits to be issued for new dwellings shall be limited annually to 3% of the number of dwellings in the town at the start of each calendar year.
>
> *Section 2.* These permits shall be issued based on date of application, except that not more than three (3) permits may be issued per developer or within a subdivision in a calender [sic] year."

The plaintiff, Stoney-Brook Development Corporation (Stoney-Brook), owns a large tract of land in Fremont, which has been subdivided into fifty-two lots. In 1979, Stoney-Brook applied for four building permits but was issued only three permits, based upon the limitation imposed by Article IV-A of the zoning ordinance. In December 1979, Stoney-Brook filed a petition for declaratory and injunctive relief in the superior court, alleging that Article IV-A was illegal and unenforceable and requesting a court order requiring Fremont to issue the additional permit.

In 1980, the town's planning board adopted a "Comprehensive Community Plan." The plan assumed "a fairly constant growth rate of 3% or less per year based on existing growth regulation." In June 1981, Stoney-Brook moved to amend its petition for declaratory and injunctive relief and alleged that the community plan was an insufficient foundation for Fremont's growth control ordinance.

■ We have previously addressed the issue of growth limitations and controls in *Beck v. Town of Raymond*, 118 N.H. 793, 394 A.2d 847 (1978). We stated there that growth controls must be "reasonable and nondiscriminatory," "should be the product of careful study and should be reexamined constantly with a view toward relaxing or ending them," should be accompanied by "[g]ood faith efforts to increase the capacity of municipal services," and "must not be parochial; that is, controls must not be imposed simply to exclude

outsiders, [citations omitted], especially outsiders of any disadvantaged social or economic group." *Id.* at 800–01, 394 A.2d at 852.

Subsequent to our decision in *Beck*, the legislature enacted RSA 31:62-a (Supp. 1983) (repealed by Laws 1983, 447:5, I) (current version at RSA 674:22 (Supp. 1983)). Fremont argues that this statute must be interpreted as superseding and eliminating these requirements of a valid growth control ordinance which we outlined in *Beck*. The statute provides:

> "Growth Management; Timing of Development. The legislative body of a city or town may further exercise the powers granted under this subdivision to regulate and control the timing of development. Any ordinance imposing such a control may be adopted only after preparation and adoption by the planning board of a master plan and capital improvement program and shall be based upon a growth management process intended to assess and balance community development needs and consider regional development needs."

A member of the House Committee on Municipal and County Government, in reporting on the bill which became RSA 31:62-a (Supp. 1983), and RSA 31:62-b (Supp. 1983) (entitled Growth Management; Interim Regulation), stated: "This bill is the result of a lawsuit in Raymond and should eliminate further legal action caused by moratoria." N.H.H.R. JOUR. 343 (1979). Fremont argues that this statement is evidence that RSA 31:62-a (Supp. 1983) was intended to protect local growth control ordinances from legal challenge; but nothing in the language of this statute contradicts or is inconsistent with our opinion in *Beck*.

■■ In *Beck*, we held that a growth control ordinance, enacted as a *general* ordinance, was not a valid exercise of the police power delegated to a municipality pursuant to RSA 31:39. *Beck v. Town of Raymond*, 118 N.H. at 795, 394 A.2d at 849. We upheld Raymond's *zoning* ordinance only as "a *temporary* emergency measure to allow the town two years at most to develop a master or comprehensive plan for phasing in growth and providing therefor." *Id.* at 801, 394 A.2d at 852. RSA 31:62-a (Supp. 1983), enacted in response to *Beck*, appears only to provide a statutory framework consistent with *Beck* for phasing in growth in a manner which would withstand legal challenge. Accordingly, the master correctly concluded that he should consider whether the Town of Fremont's community plan and its growth control ordinance complied with RSA 31:62-a (Supp. 1983) in light of our earlier decision in *Beck*.

■ Although municipal ordinances carry with them a presumption of validity, *Town of Nottingham v. Harvey*, 120 N.H. 889, 892, 424 A.2d 1125, 1127 (1980); *Rochester v. Barcomb*, 103 N.H. 247, 253, 169 A.2d 281, 285 (1961), we believe the record supports the master's finding that Stoney-Brook sustained its burden of showing that Article IV-A of the Fremont Zoning Ordinance is illegal and unenforceable. Further, because the community plan assumed a growth rate based on this invalid growth ordinance, the community plan is, itself, invalid.

■ The crux of Stoney-Brook's argument is that the 3% growth rate was not the normal, unrestricted growth rate, but was an arbitrary figure when it was selected *in 1975* as the standard for the limitation of new dwelling building permits. Indeed, a 1975 member of the planning board testified that, while population trends were discussed at that time, a figure of 3% was "taken out of a hat" because "that seemed to be the normal growth at that time." RSA 31:62-a (Supp. 1983) requires "a growth management process intended to *assess and balance community development needs.*" (Emphasis added.) Selection of an apparently arbitrary figure that represents the rate of growth at a particular point in time hardly constitutes the assessment of community development needs and "careful study" contemplated by either *Beck* or the statute. *See Beck v. Town of Raymond*, 118 N.H. at 800, 394 A.2d at 852.

■ In 1980, the community plan perpetuated the growth rate at this arbitrary figure. The coordinator of the community plan committee testified that the committee determined from its own data that "the 3% growth was appropriate for timely development" and so "did not make any recommendation as to having that changed." There was no further testimony regarding this "data." In any event, the appropriateness of any particular growth restriction is premised on a determination of the normal growth rate, and nothing in the record indicates that the committee made an independent determination that 3% would have been the growth rate unrestricted by the ordinance itself. Although a town need not hire an independent consultant, "[c]omprehensive planning with a solid scientific, statistical basis is the key element in land use regulation in New Hampshire." *Patenaude v. Town of Meredith*, 118 N.H. 616, 621, 392 A.2d 582, 585 (1978); *see also* RSA 674:2, IX (Supp. 1983).

■ Finally, the plan failed to address the ultimate objective of relaxing or ending growth controls and to articulate the means to accomplish this goal. *See Beck v. Town of Raymond*, 118 N.H. at 800, 394 A.2d at 852. In addition, RSA 31:62-a (Supp. 1983) also requires

Fremont to "consider regional development needs." The community plan projected to the year 2000 based upon the existing 3% growth regulation. The recommendations for the capital improvements budget were also made assuming the existence of this 3% growth limitation. We recognize Fremont's desire to preserve its small town environment and rural atmosphere. However, Fremont itself has recognized that it "is in the center of the fastest growing area of New Hampshire." It is unrealistic to suggest that limiting its growth indefinitely to 3% per year is guiding the town's growth, as expressed in its community plan, in "a reasonable, responsible and conscientious manner" when, by its own figures, the average growth in the seven abutting towns is almost double that growth rate.

■■ Growth control ordinances are intended to regulate and control the *timing* of development, *see* RSA 31:62-a (Supp. 1983), not the *prevention* of development. We reiterate our belief that regional or state-wide land-use planning which coordinates local responses to the reality of the population escalation in New Hampshire is perhaps the most effective and equitable way of dealing with the impact of growth and development. *See Beck v. Town of Raymond*, 118 N.H. at 801, 394 A.2d at 852.

■ We hold that the record amply supports the master's finding that Fremont's "Comprehensive Community Plan" is not a master plan or capital improvement program legally sufficient to support a growth control ordinance enacted pursuant to RSA 31:62-a (Supp. 1983) (repealed by Laws 1983, 447:5, I) (current version at RSA 674:22 (Supp. 1983)), and that Article IV-A of the Fremont Zoning Ordinance is illegal and unenforceable.

*Affirmed.*

All concurred.