VICTORIAN REALTY GROUP

v.

CITY OF NASHUA & a.

November 5, 1987

*Prunier, Nadeau & Leonard P.A.*, of Nashua (*Thomas J. Leonard* on the brief and orally), for the plaintiff.

*Judy T. Constantian*, assistant corporation counsel, City of Nashua, by brief and orally, for the defendants.

*Baldwin & Dunn*, of Concord (*Carolyn W. Baldwin* on the brief), by brief for the intervenor, Robert P. Borowski.

BROCK, C.J.   The plaintiff, Victorian Realty Group, appeals from a decree of the superior court dismissing its appeal, under RSA 677:15, from a decision of the Nashua Planning Board denying plaintiff's request to relocate the boundary line between two contiguous lots it owns in Nashua's historic district.

After a view, hearing, and examination of the certified record from the planning board, the Master (*Mayland H. Morse, Jr.*, Esq.) concluded that the plaintiff had not met its burden of proving that the decision of the planning board was unreasonable or unlawful. RSA 677:15. His recommendation that the appeal be dismissed was approved by the Superior Court (*Murphy*, J.). We affirm.

The two parcels of land involved in this case are located on Manchester and French Streets. The Manchester Street property has a three-story Victorian house and a detached two-story carriage house on it. The only improvement to the French Street property is a single-family home. In 1983, before it owned the French Street

property, the plaintiff obtained a special exception allowing it to use and modify the interior of the main building on the Manchester Street property as an office building. After several unsuccessful attempts to obtain permission to convert the carriage house into either additional office space and expanded interval parking or dwelling units, the plaintiff decided to purchase the French Street property, whose southerly lot line is contiguous with the land on which the carriage house is located. The plaintiff's purpose in making this purchase was to integrate the French Street property and the carriage house property into a single lot, both having the frontage required by the zoning ordinance, so the carriage house could be converted into a 3-apartment dwelling and the French Street property into a 4-apartment dwelling. The Manchester Street office building would remain on a separate lot.

The plan which was submitted to the Nashua Planning Board, and which is the subject of this appeal, requested relocation of the lot line between the French Street and the Manchester Street properties to accomplish plaintiff's purpose.

Two public hearings were held by the planning board on the plaintiff's application for the lot line relocation and site plan review, along with a request for waiver of earlier conditions relating to landscaping on the property. At the hearing on February 20, 1986, several individuals testified or submitted letters relative to the plan. At the conclusion of this hearing, the board tabled the plan in order to solicit the recommendations of the Nashua Historic District Commission. The historic district commission expressed its concern that the proposed "blacktopping of the presently grassed and treed areas [would] have a detrimental effect on the character of [the residential] neighborhood" and stated that the commission was "not enthusiastic about relocation of the lot line because it separates the Carriage House from the main building on this significant site." Letter from Nashua Historic District Commission to Nashua City Planning Board (March 3, 1986). Nonetheless, the commission made several recommendations concerning landscaping, exterior color of the buildings, and other aesthetic considerations for Victorian Realty Group to follow should the planning board decide to approve the plaintiff's plan. *Id.* Finally, after a second hearing on March 6, 1986, the planning board denied the lot line relocation, stating that the historical character and significance of the property requires that the main house and carriage house remain on one lot.

The principal issue before us is whether the master erred in ruling that the Nashua Planning Board had the authority to deny the plaintiff's application for a lot line relocation based on the historical character and significance of a property that is located in an historic district.

The plaintiff has persisted in describing its application as a request for a lot line relocation, arguing that the request should be granted, regardless of the developer's plans for development, if the resulting lots would otherwise comply with the requirements of the zoning ordinances and other regulations. The master correctly noted that the plaintiff's request is in fact and as a matter of law a resubdivision. Since the plaintiff has conceded this point on appeal, the question becomes whether a planning board has the authority to reject a subdivision or resubdivision proposal for property located in a lawfully designated historic district for reasons relating to the historic character and significance of the property.

The planning board's review of the plaintiff's proposal requires it to go far beyond the mere consideration of a lot line relocation. Before exercising its discretion to grant or deny the requested subdivision, which includes a multi-unit building development, it must consider the proposal in a much broader context and in a depth consistent with its duties under all relevant statutes, ordinances, and regulations.

In conducting its review of the plaintiff's development proposal, the planning board was specifically authorized to consider "the effect of the proposed development on health, safety, nuisance, property values, aesthetics, traffic conditions and future highway improvements." Section 424, LAND SUBDIVISION REGULATIONS, City of Nashua. Additionally, the City of Nashua has established an historic district and an historic district commission pursuant to State enabling acts. RSA 674:45. In so doing the City recognized that "the loss of historic or architecturally significant structures through demolition, alteration, moving or incompatible new construction contributes to the destruction of the unique character of the city." Section 1501, ZONING AND SUBDIVISION ORDINANCES, City of Nashua. Historic preservation is, thus, a part of an overall plan to promote general community welfare. See RSA 674:45 ("The preservation of structures and places of historic and architectural value is . . . declared to be a public purpose.").

■ It would frustrate clearly expressed legislative intent if we were to hold that historic district commissions could not render, and planning boards could not consider, recommendations concern-

ing applications for subdivision and site plan approval involving an historic district. *See generally Hanrahan v. City of Portsmouth*, 119 N.H. 944, 947, 409 A.2d 1336, 1339 (1979). The members of the historic district commission, in evaluating such a proposal, may consider the "relationship of [an] applicant's proposal to its surroundings, to the locating and arrangement of structures, to the architectural treatment of the exterior features and finish of structures, and to the compatibility of land uses within the district as they may be deemed to affect the character and integrity of the district to achieve the purposes of this subchapter." Section 1505, ZONING AND SUBDIVISION ORDINANCES, City of Nashua. The members of the historic district commission are the most familiar with the historic district, and are uniquely suited to provide recommendations to the planning board. We conclude that the planning board may properly consider the recommendations of the historic district commission and may deny the plaintiff's subdivision application based on factors related to the historic character and significance of the buildings at issue.

Having so determined, we next decide whether the denial of the requested lot line relocation, based upon the historical character and significance of the property, was unreasonable under the facts of this case. The plaintiff argues that a denial on the basis of the historical character of the buildings and significance of the property is unreasonable and arbitrary in view of the covenants proposed by the plaintiff. The record indicates that the plaintiff agreed to impose restrictions in the two deeds for the property which required (1) that the color of the main house and the carriage house always remain the same and (2) that no visual obstructions would be constructed between the two buildings.

The historic district commission submitted a letter expressing its essentially negative recommendations regarding the plan. In particular, the commission stated that it was "not enthusiastic about relocation of the lot line because it separates the carriage house from the main building on this significant site." The commission was especially concerned about any visual or physical separation between the two buildings. The conversion of the carriage house and the house on French Street into condominium units would require a substantial number of parking spaces. The required number of parking spaces would detract from the residential appearance of the neighborhood. Concern was also expressed that a "short cut" or through street would be formed in the middle of the block. The intervenor also expressed concern that

a through street might be created, effectively disengaging the carriage house from the main house.

Upon the evidence before us, we hold that the record adequately supports the master's determination that the planning board had sufficient evidence upon which to deny the plaintiff's request. *Davis v. Town of Barrington*, 127 N.H. 202, 209, 497 A.2d 1232, 1235 (1985). Therefore, we conclude that the superior court could reasonably have ruled as it did, and affirm its decision.

*Affirmed.*

All concurred.