Rockingham
No. 89-350

PORTSMOUTH ADVOCATES, INC.

v.

THE CITY OF PORTSMOUTH & a.

March 8, 1991

*Casassa and Ryan*, of Hampton (*John J. Ryan* on the brief and orally), for the plaintiff.

*Shaines and McEachern P.A.*, of Portsmouth (*Robert A. Shaines* and *Jonathan M. Flagg* on the brief, and *Mr. Flagg* orally), for the intervenor.

BROCK, C.J. The issue before us on this appeal is whether the Portsmouth City Council had authority under RSA 674:46 (Supp. 1990) to change the boundaries of Portsmouth's two historic districts. The plaintiff, Portsmouth Advocates, Inc. (Advocates), challenges the Superior Court's (*Nadeau*, J.) order upholding the City of Portsmouth's rezoning of its historic district boundaries to move certain properties from the city's Historic District A to its less restrictive Historic District B. We affirm.

At the center of this dispute is a Portsmouth restaurant owned by Peter Lukas, trustee of the intervenor in this case, B & L Portsmouth Realty Trust. In 1977, the Portsmouth City Council established a historic district, now known as Historic District A, which encompasses most of the city's downtown area and until recently included Mr. Lukas's restaurant. The city's zoning ordinance requires that before proceeding with any new construction on existing buildings in this district, approval from the city's Historic District Commission (H.D.C.) must be obtained. In 1982, the city council added Historic District B, which borders Historic District A and covers much of the remainder of the central part of Portsmouth. In this district, approval from the H.D.C. is only required for demolitions to the buildings therein, and is not required for new construction.

From 1985 until 1987, Mr. Lukas unsuccessfully sought the H.D.C.'s approval for construction of a solarium addition to his restaurant. Instead of appealing the H.D.C.'s denial to the Portsmouth Zoning Board of Adjustment, Mr. Lukas, in early 1987, petitioned the city council to amend the historic district boundaries in order to remove his restaurant from the more restrictive District A. The city council responded by preparing a proposed change in the zoning

ordinance and referring the matter to the Portsmouth Planning Board for its recommendation.

The planning board, after a public hearing, recommended against the proposed change, apparently fearing that such an amendment to the zoning ordinance would be characterized as illegal spot zoning. In response to the planning board's concerns, Mr. Lukas asked the city council to revise the proposed zoning amendment to include seven properties that linked the Lukas property to the boundary between Districts A and B. The city council agreed to the revision and voted to hold a public hearing on the revised proposed amendment. In April 1987, the hearing was held and the council voted to accept the boundary change.

After failing to persuade the city council to reconsider the zoning amendment, the Advocates, pursuant to RSA 677:4, appealed to the superior court claiming that the rezoning violated RSA 674:46-a, IV (Supp. 1990) (relating to historic districts), and that it represents illegal spot zoning under New Hampshire law. Prior to the hearing on the merits of the appeal, Mr. Lukas, through B & L Portsmouth Realty Trust, intervened and filed a motion to dismiss on the grounds of lack of standing. The superior court properly denied the motion, see RSA 677:4, and, in January of 1989, held a hearing on the merits of the Advocates' appeal. Soon thereafter, the court ruled that the redrawing of the boundaries between Historic Districts A and B was both a proper and a legal exercise of the city council's powers. It is from this ruling that the Advocates now appeal.

The first argument raised by the Advocates is that the rezoning of the two historic districts violated RSA 674:46-a, IV, which provides that "[a]ll [historic] districts and regulations shall be compatible with the master plan and zoning ordinance of the city, town, or county in which they exist." According to the Advocates, this statutory provision prohibits the city council from legislatively revising its historic districts when the change is incompatible with the city's master plan. Because the Portsmouth Master Plan includes the Lukas property in Historic District A, the Advocates contend that the rezoning violated the statute's compatibility requirement. We disagree.

RSA 674:46-a, IV is the final part of a section entitled "Powers and Duties of the Historic District Commission." This section provides, inter alia, that local historic district commissions have the powers to research and prepare a historic district ordinance for legislative con-

sideration, RSA 674:46-a, I; to establish any applicable regulations, RSA 674:46-a, II; and to administer whatever historic district ordinances and regulations have been established, RSA 674:46-a, III. Nowhere in this section does the legislature discuss the powers and responsibilities of the local legislative body. This discussion takes place in the preceding section of the statute, RSA 674:46, where the legislature directs, without restriction, that it is the city council that has the authority "to establish, change, lay out and define historic districts." *Id.* Moreover, adherence to the defendant's position that the Portsmouth City Council is legally bound by the city's master plan would be contrary to what both the legislature and this Court have said about the role of the master plan in New Hampshire. *See* RSA 674:1, I; RSA 674:2 (Supp. 1990); *Rancourt v. Town of Barnstead*, 129 N.H. 45, 49, 523 A.2d 55, 58 (1986).

Viewed in this context, we conclude that RSA 674:46-a, IV's mandate for ensuring compatibility between a town's master plan and its historic district is directed to the local historic district commissions in performing their duties, and not to a municipality's legislative body. Accordingly, the Portsmouth City Council's boundary change between Historic Districts A and B did not violate the statute.

The Advocates also argue that the trial court erred when it ruled that the redrawing of the boundaries for the purpose of removing the Lukas restaurant from District A did not constitute illegal spot zoning under New Hampshire law. "The mere fact that the amendment zoned a small area at the request of a single owner does not itself make the result spot zoning." *Edgewood Civic Club v. Blaisdell*, 95 N.H. 244, 246, 61 A.2d 517, 518 (1948), *quoted in Bosse v. Portsmouth*, 107 N.H. 523, 530, 226 A.2d 99, 105 (1967). Rather, the question to be answered is whether an area has been "singled out for treatment different from that of similar surrounding land which cannot be justified on the bases of health, safety, morals or general welfare of the community and which is not in accordance with a comprehensive plan." *Schadlick v. Concord*, 108 N.H. 319, 322–23, 234 A.2d 523, 526 (1967), *quoted in Treisman v. Town of Bedford*, 132 N.H. 54, 60, 563 A.2d 786, 789 (1989).

When reviewing the trial court's ruling on a claim of spot zoning, we ask whether its decision is unsupported by the evidence, *see Edgewood Civic Club v. Blaisdell supra*, or erroneous as a mat-

ter of law, *see Munger v. Town of Exeter*, 128 N.H. 196, 198, 512 A.2d 418, 420 (1986). We do this, keeping in mind that the plaintiff carries the burden before the trial court to demonstrate that the rezoning by the city is unreasonable or unlawful. *See* RSA 677:6.

After a review of the record, we cannot say that the trial court's ruling was unsupported by the evidence. Although this zoning change clearly was instigated at Mr. Lukas's request, as noted above, this factor alone does not render the city council's actions unreasonable. The Advocates assert in their brief, however, that in addition to this factor, there was "no rationale related to any public purpose for the inclusion of the Lukas or other properties within the re-zoning proposal." This assertion is unsupported by the record.

■ The protection of historic landmarks and areas is a legitimate and recognized exercise of a town's police powers for the purpose of promoting that town's general welfare. *See Victorian Realty Group v. City of Nashua*, 130 N.H. 60, 62, 534 A.2d 381, 383 (1987); RSA 674:45. The trial court found, and the Advocates do not dispute, that the eight properties affected by the boundary change are not of historical significance. As the trial court noted:

> "The Lukas building was built during the 1930's and it is neither one of the older buildings in Portsmouth nor is it historically significant. Additionally, a Historic District Survey . . . conducted for the City lists most of the structures abutting Lukas' property as intrusions or noncontributing buildings to the City's history."

The Advocates claim, however, that despite the lack of historical importance of these properties, their inclusion originally into Historic District A was a result of the Portsmouth Master Plan, which expresses the community's long-term development plans and desires. Consequently, according to the Advocates, the rezoning was not in accordance with the town's comprehensive plan and is therefore invalid. *See Bosse v. Portsmouth*, 107 N.H. at 530, 226 A.2d at 105.

Portsmouth's master plan was, however, almost a decade old when the city council made the boundary change requested by Mr. Lukas. The master plan serves as guide for the community, and is made up of recommendations for a city's future development. *See Rancourt v. Town of Barnstead*, 129 N.H. at 48–49, 523 A.2d at 57–58. In this case, pursuant to the recommendations found in its 1980 Master Plan, the city originally adopted historic district boundaries in

accordance with the 1980 master plan. The plan, however, recognized that the strength of its recommendations, over time, would become diluted. It states:

> "[A]s the Plan attempts to cover a longer period of time, the level of detail of the recommendations must necessarily decrease. The needs, opportunities, and trends of the next five years can be anticipated much more accurately. Consequently, while some of the general policies established may be valid for a long period, most of the content of the Master Plan focuses on the development of the City over the next five years."

■  This language recognizes the need for flexibility in the area of Portsmouth's long-term development. Thus, contrary to the Advocates' contention, the city council's departure from the Plan's recommended boundaries does not, in and of itself, indicate either that the rezoning was not compatible with Portsmouth's comprehensive plan or that it was an unreasonable action by the city council. To the contrary, the city council reasonably exercised its powers to adjust historic district boundaries in order to remove buildings lacking historical significance. Accordingly, we affirm the ruling by the superior court.

*Affirmed.*

All concurred.